ARMSTRONG *against* BOYD, *et als.*

A conveyance of land described as a tract surveyed to a particular person, passes all within the bounds of the survey; such a description is as operative to define the subject of the grant, as if the courses and distances were included in the deed: and such deed will vest a good title to the land within the said survey, although the grantor may have had a better title to the land than that described, of which he was ignorant at the time.

The common ignorance of both the grantor and grantee of the true boundaries, would perhaps, control an erroneous description of the subject-matter of the grant, founded on the fact of interference.

Appeal from the Circuit Court of *Northumberland* county, held by *Chief Justice Gibson.*

This was an action of ejectment for a tract of land, in which *Anthony Armstrong* was plaintiff, and *John Boyd* and others were defendants. The plaintiff and defendants were owners of adjoining tracts of land; the surveys of which interfered with each other; the land in dispute was within the lines of this interference. The plaintiff's title was founded on an application of *Joseph Jones;* and the defendants were the owners of a title which originated in the name of *Ensign Stine.* On the 26th of January, 1775, *Ruben Hains* was the owner of both these tracts of land; and that in the name of *Ensign Stine* was the elder and better title to the land included within the interference, and now in dispute On that day he conveyed the tract in the name of *Joseph Jones* to *Archibald Irvine,* under whom the plaintiff now claims, and in the deed thus describes it: "and the said *Reuben Hayns* doth grant, bargain and sell unto the said *Archibald Irvine,* his heirs and assigns, a certain tract or piece of land, situate on the head of Muddy run, in the county of *Northumberland,* and province aforesaid, lately laid out unto *Joseph Jones,* by certain metes and bounds in the said survey mentioned, containing one hundred and sixty-two acres, be the same more or less." This deed recorded the 8th May, 1832. The question in the cause was, whether this deed was conclusive in favor of the plaintiff. The *Chief Justice* directed a verdict to be given for the defendants, and reserved the point, which was now argued by

*Donnel* and *S. Hepburn* for the appellant, who cited 1 *Mass.* 227. 2 *Mass.* 382. 8 *Johns. R.* 406. 17 *Mass.* 210. 6 *Serg. & Rawle,* 488. 3 *Mass.* 356. 16 *Johns. R.* 110. 17 *Serg. & Rawle,* 156. 15 *Johns. R.* 472. 14 *Johns. R.* 226. 3 *Johns. R.* 331. 5 *Serg. & Rawle,* 246. 2 *Serg. & Rawle,* 46. 1 *Yeates,* 307. 3 *Burr.* 1910. 2 *Rawle,* 114. *Pow. on Cont.* 264.

*Greenough* and *Greer* for appellees, cited 6 *Mass.* 131. 6 *Bin.* 39. 2 *Yeates,* 152. 13 *Serg. & Rawle,* 304.

[Armstrong *v.* Boyd.]

The opinion of the court was delivered by

GIBSON, C. J.—A conveyance of land described as a tract surveyed to a particular person, passes all within the bounds of the survey. It is, in fact, a conveyance by reference to courses and distances or metes and bounds, which are as operative to define the subject of the grant, as if they were included in the deed. That *Ruben Hains* may have intended to sell no land within the *Stine* survey, cannot prevent an application of this principle to his conveyance of the *Jones* tract, in which the land is described "as lately surveyed and laid out unto *Joseph Jones, by certain metes and bounds* IN THE SAID SURVEY MENTIONED." Such an intention, had an interference been suspected, might have weighed with him as a reason to decline the bargain, but it is certainly no reason why the bargain should not bind him when concluded. *Hains* sold and *Irvine* paid for all the land in the survey; and why should not *Hains*, or those who are in his place, be held to make it good? That his conveyance passed the title at law, is not to be questioned; and from what can an equity arise to control its effects? Certainly not from the vendor's misapprehension of a collateral fact, of which it was his business to judge for himself. Had he acquired the *Stine* tract subsequently, he would undoubtedly have been bound to convey so much of it as would have been necessary to establish his former grant; and it can make little difference in respect to the justice or the law of the case, that he was already the owner of the tract. In fact, the present case is more favorable to the purchaser than the one supposed, because on this he has the legal estate, and in that he would only have had an equity. Had the parties, being mutually apprised of the true boundary of the *Stine* tract, actually intended respectively to sell and to buy in accordance with it, their common understanding of the bargain would perhaps have controlled an erroneous description of the subject-matter of the grant, founded, as it would have been, on their common ignorance of the fact of interference. That would have presented a case of mistake in respect to the very foundation of the treaty, which is always proper for relief. But it would not be endured, that mere ignorance of a better title in the vendor, should enable him to set it up against his own grant, not merely of a defective title, to go for what it should be worth, but of the fee simple of land sold for its full value. In *Seckle* v. *Engle*, 2 *Rawle*, 68, a testator who was ignorant that his two warrants were laid on the same ground, devised them separately to two persons by the same will; and the devisee of the younger, though a volunteer, was held to take an estate in common with the other, on the principle that the land and not the title was devised: much more reason is there for such a construction in favor of a purchaser who has

(Armstrong *v.* Boyd.)

paid for every acre. *Hawkins* v. *Hanson,* 1 *Maryland R.* 623, was the very case of a purchaser of the younger title, from the owner of interfering surveys, whose deed was held in a court of law, to convey an indefeasible title—a case in all its points like the present. In *Seckle* v. *Engle,* the interference was total; but the principle is the same, whether it goes to the whole or to a part. To ascertain the extent of the grant, however, it is said the courses and distances are not to govern, but the boundary called for, which in this instance is the line of the *Stine* survey. That survey is indeed called for as an abuttal, but it is difficult to conceive how that can make any particular line of it, the common boundary of both. If, as frequently happens in similar cases, the actual line of the *Jones* tract had not come up to the abuttal, the effect of the call would certainly not have been sufficient to prevent the occurrence of a vacancy; and, in opposite circumstances, it can have as little efficacy in preventing the surveys from actually lying foul of each other. The lines traceable on the ground, or in other words the foot-steps of the surveyor, are every thing; while the diagram with its calls, courses and distances, is comparatively nothing. The defendants, however, derive their title through a purchaser without notice, and hence an argument that the title of the plaintiff ought to be postponed. By the common law, a purchaser without notice was protected against nothing in the shape of a legal estate or a legal incumberance, the maxim of *prior in tempore, potior in jure,* being as applicable to these, as it still is to mere equities, which stand equal in every other respect; and where it has not been altered by statute, this common law principle remains in force. In a conflict between a legal and an equitable estate, the former in the hands of a purchaser without notice, will be preferred, because the equity being equal, the law, and consequently the legal title, must prevail. Here, however, the conflict is between legal titles; and the question how far has the common law principle been altered by statute, is easily answered. At the date of *Irvine's* purchase, he might have had his deed recorded; but there is no statute which requires him to have done so, then or since: consequently the plaintiff, who claims under him, is not to be postponed. The cause is sent to another jury to try, under these principles, whether the defendants are in possession of any part of the *Jones* tract.

New trial awarded.